IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 13-cv-02495-PAB

TONI S. OLIVA,

      Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

      Defendant.
_____

**ORDER**
_____

This matter comes before the Court on the Complaint [Docket No. 1] filed by plaintiff Toni Oliva. Plaintiff seeks review of the final decision of defendant Carolyn W. Colvin (the "Commissioner") denying her claim for a period of disability and disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-33 and 1381-83c.[1] The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g).

**I. BACKGROUND**

On February 7, 2012, plaintiff applied for disability and disability insurance benefits as well as supplemental security income under Titles II and XVI of the Act. R. at 11. Plaintiff alleged that she had been disabled since July 10, 1997 and later amended that date to June 2, 2011. *Id*. After an initial administrative denial of her claim, plaintiff received a hearing before an Administrative Law Judge ("ALJ") on March

_____

[1]The Court has determined that it can resolve the issues presented in this matter without the need for oral argument.

6, 2013.  *Id*.  On March 22, 2013, the ALJ issued a decision denying plaintiff's claim.  *Id.*

at 20.  The ALJ found that plaintiff had the severe impairment of arthritis.  R. at 14.  The

ALJ concluded that plaintiff did not have an impairment or combination of impairments

that meets one of the regulations' listed impairments, R. at 16, and ruled that plaintiff

had the residual functional capacity ("RFC") to

> perform light work[2] as defined in 20 CFR 405.1567(b) and 416.967(b) except
> the claimant  can lift and carry 10 pounds frequently and 20 pounds
> occasionally; can stand and/or walk with normal breaks for 6 out of 8 hours;
> sit with normal breaks for 6 out of 8 hours; and can perform pushing and
> pulling with the upper and lower extremities with the aforementioned weight
> limitations.

R. at 16.  The ALJ found that plaintiff had no past relevant work, but, based upon this

RFC and in reliance on the testimony of a vocational expert ("VE"), the ALJ concluded

that plaintiff was not disabled as "there are jobs that exist in significant numbers in the

national economy that the claimant can perform."  R. at 19.

The Appeals Council denied plaintiff's request for review of this denial.  R. at 1.

Thus, the ALJ's decision is the final decision of the Commissioner.

---

[2]Light work is defined as:
lifting no more than 20 pounds at a time with frequent lifting or carrying of
objects weighing up to 10 pounds. Even though the weight lifted may be very
little, a job is in this category when it requires a good deal of walking or
standing, or when it involves sitting most of the time with some pushing and
pulling of arm or leg controls. To be considered capable of performing a full
or wide range of light work, you must have the ability to do substantially all
of these activities. If someone can do light work, we determine that he or she
can also do sedentary work, unless there are additional limiting factors such
as loss of fine dexterity or inability to sit for long periods of time.
20 C.F.R. § 404.1567

## II.  ANALYSIS

### A.  Standard of Review

Review of the Commissioner's finding that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole.  *See Angel v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003).  The district court may not reverse an ALJ simply because the court may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the ALJ was justified in her decision.  *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990).  "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).  Moreover, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion."  *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).  The district court will not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met."  *Flaherty*, 515 F.3d at 1070.  Nevertheless, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence."  *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

### B.  The Five-Step Evaluation Process

To qualify for disability benefits, a claimant must have a medically determinable

physical or mental impairment expected to result in death or last for a continuous period of twelve months that prevents the claimant from performing any substantial gainful work that exists in the national economy.  42 U.S.C. § 423(d)(1)-(2).  Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A) (2006).  The Commissioner has established a five-step sequential evaluation process to determine whether a claimant is disabled.  20 C.F.R. § 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).  The steps of the evaluation are:

> (1) whether the claimant is currently working; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets an impairment listed in appendix 1 of the relevant regulation; (4) whether the impairment precludes the claimant from doing his past relevant work; and (5) whether the impairment precludes the claimant from doing any work.

*Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (citing 20 C.F.R. § 404.1520(b)-(f)).  A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis.  *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

The claimant has the initial burden of establishing a case of disability.  However, "[i]f the claimant is not considered disabled at step three, but has satisfied her burden of establishing a prima facie case of disability under steps one, two, and four, the burden shifts to the Commissioner to show the claimant has the residual functional capacity

4

(RFC) to perform other work in the national economy in view of her age, education, and work experience." *See Fischer-Ross v. Barnhart,* 431 F.3d 729, 731 (10th Cir. 2005); *see also Bowen v. Yuckert,* 482 U.S. 137, 146 n. 5 (1987). While the claimant has the initial burden of proving a disability, "the ALJ has a basic duty of inquiry, to inform himself about facts relevant to his decision and to learn the claimant's own version of those facts." *Hill v. Sullivan,* 924 F.2d 972, 974 (10th Cir. 1991).

### C. The ALJ's Decision

#### 1. *Treating Physician*

A treating physician's opinion is entitled to controlling weight so long as it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 404.1527(c)(2). The Tenth Circuit has articulated a two-step test for determining whether the opinion of a treating source is entitled to controlling weight:

> An ALJ must first consider whether the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques." SSR 96–2p, 1996 WL 374188, at *2 (quotations omitted). If the answer to this question is "no," then the inquiry at this stage is complete. If the ALJ finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence in the record. *Id.* In other words, if the opinion is deficient in either of these respects, then it is not entitled to controlling weight. *Id.*

*Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). "A finding that a treating source's medical opinion is not entitled to controlling weight does not mean that the opinion is rejected. It may still be entitled to deference and be adopted by the adjudicator." SSR 96-2p, 1996 WL 374188, at *1 (July 2, 1996). The level of deference accorded a non-controlling opinion of a treating physician depends on a

number of factors, including the length of the treating relationship, the nature and extent of the relationship, the supportability of the opinion and its consistency with the record as a whole, and the physician's medical specialization.  20 C.F.R. § 404.1527(c)(2)-(6). An ALJ need not expressly discuss the application of each factor to each medical opinion, so long as the ALJ's opinion is "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."  *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (internal citations omitted).  "When a treating physician's opinion is inconsistent with other medical evidence, the ALJ's task is to examine the other physicians' reports to see if they outweigh the treating physician's report, not the other way around."  *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) (internal citations omitted).

Due to the lack of a treating relationship between plaintiffs and non-treating physicians, the opinions of such physicians "are weighed by stricter standards, based to a greater degree on medical evidence, qualifications, and explanations for the opinions, than are required of treating sources."  SSR 96-6p, 1996 WL 374180, at *2 (July 2, 1996).  "[B]ecause nonexamining sources have no examining or treating relationship with [claimants], the weight [an ALJ] will give their opinions will depend on the degree to which they provide supporting explanations for their opinions" and "the degree to which these opinions consider all of the pertinent evidence in [a] claim, including opinions of treating and other examining sources."  20 C.F.R. § 404.1527(c)(3).

Omitting a sufficiently thorough explanation for the weight given to the opinion of a treating physician (if given less than controlling weight) or for the weight given the

opinion of a nonexamining physician is grounds for remand.  *See Frey v. Bowen*, 816

F.2d 508, 515 (10th Cir. 1987) (remanding denial of benefits because ALJ improperly

rejected the treating physician's opinion and relied instead on the findings of a non-

treating physician, which the court found to be "of suspect reliability"); *Andersen v.

Astrue*, 319 F. App'x 712, 728 (10th Cir. 2009) (unpublished) (remanding denial of

benefits where ALJ failed to indicate weight accorded to treating physician's opinion

and failed to supply "good reasons" for according opinion that weight).  Similarly,

"[u]nless a treating source's opinion is given controlling weight, the administrative law

judge must explain in the decision the weight given to the opinions of a State agency

medical . . . consultant."  20 C.F.R. § 416.927(e)(2)(ii).

Plaintiff argues that the ALJ erred in assigning little weight to the February 2013

opinion of plaintiff's treating physician Dr. John Wisneski.  Dr. Wisneski's opinion is set

forth in a check-box, fill-in-the-blank document.  R. at 213-215.  Dr. Wisneski indicated

that plaintiff was limited to occasionally carrying 10 pounds, to sitting for 20 minutes at a

time and for 3 hours in an eight hour work day, and to standing for 10 minutes at a time

and for 2 hours in an eight hour work day.  R. at 213.  Dr. Wisneski checked boxes

indicating that plaintiff had significant postural and upper extremity limitations, R. at

214, that plaintiff would need to lie down for 15 minutes at a time, that plaintiff suffered

from fatigue for 30 to 60 minutes at a time, and that plaintiff suffered from daily

headaches.  R. at 215.

The ALJ acknowledged that Dr. Wisneski was a treating physician, but gave his

opinion little weight because:

the opinion is not explained in any significant detail.  It is also not

7

> supported by the claimant's exam findings that demonstrate only tenderness and no other consistently present findings generally associated with severe arthritis, such as swelling, Heberdon's nodes, or other deformities.  Indeed the claimant has had normal range of motion of all joints on almost all of her exams, and this also appears significantly inconsistent with Dr. Wisneski's opinion.

R at 19.  The ALJ instead found that the examination results and longitudinal treatment evidenced by Dr. Wisneski's treatment notes, R. at 186-91, 201-12, supported her RFC finding and that the consultative examination report of clinical psychologist Dr. Brett Valette, R. at 193-94, and consultative examination report of Dr. Marshall Meier, R. at 180-84, "support this determination."  R. at 19.

Plaintiff challenges the ALJ's explanation of the weight she assigned Dr. Wisneski's opinion.  Docket No. 14 at 21-23.  Plaintiff first argues that the ALJ improperly considered Dr. Wisneski's opinion "in a vacuum," failing to view Dr. Wisneski's opinion in light of his treatment notes.  Id. at 21.  Plaintiff, however, misreads the ALJ's decision, which explicitly indicates that the ALJ reviewed Dr. Wisneski's treatment notes and concluded that they do not support the functional limitations reflected in his opinion.  R. at 19.[3]  Plaintiff cites various portions of Dr. Wisneski's treatment notes that she argues provide an explanation for Dr. Wisneski's suggested limitations.  Docket No. 14 at 21-22.  This is, however, little more than an

---

[3]Plaintiff's cites *Williams v. Bowen*, 844 F.2d 748, 759 (10th Cir. 1988), but *Williams* is distinguishable.  In *Williams*, ALJ concluded that a treating physician's opinions were brief and unsupported by medical evidence.  *Id.*  The Tenth Circuit noted that, contrary to the ALJ's conclusion, the treating physician's statements and opinions regarding the claimant's functional limitations were contained within 80 pages of medical evidence resulting from two years of treatment.  *Id.* at 758-59.  Here, however, Dr. Wisneski's suggested limitations are not set forth in his treatment notes and his opinion does not explicitly or implicitly reference his treatment notes or examination findings.

inappropriate plea to reweigh the evidence.[4]  *See Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) ("In reviewing the ALJ's decision, we neither reweigh the evidence nor substitute our judgment for that of the agency" (quotations omitted)).

Plaintiff argues that, when the a treating physician's treatment notes are contained in the record, a treating physician's opinion may not be rejected for the reason that it "is not explained in any significant detail."  Docket No. 14 at 21.  In *Frey v. Bowen*, 816 F.2d 508, 515 (10th Cir. 1987), the Tenth Circuit held that check-box evaluation forms completed by nontreating physicians do not, by themselves, constitute substantial evidence.  Although the Tenth Circuit has declined to extend *Frey*'s holding to the opinions of treating physicians, *see Andersen*, 319 F. App'x at 723, the ALJ's decision does not reflect that she assigned little weight to Dr. Wisneski's opinion merely because it was expressed in a check-box form.  Rather, the ALJ principally found that Dr. Wisneski's proposed limitations were inconsistent with his treatment notes, which is an appropriate reason for rejecting a treating physician's opinion.  *See, e.g.*, *Young v. Barnhart*, 146 F. App'x 952, 955 (10th Cir. 2005) (unpublished) (upholding ALJ's determination that treating physician's opinion was "not substantiated by the clinical and diagnostic findings reflected in her treatment records").  Plaintiff's reliance on *Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008), does not compel a different conclusion because *Carpenter* is distinguishable.  In *Carpenter*, the Tenth Circuit distinguished *Frey*, noting that *Frey* concerned a "nontreating physician's checkmarks on the

_____

[4]The Court will, however, consider the cited portions of Dr. Wisneski's treatment note in determining whether this aspect of the ALJ's decision is supported by substantial evidence.

agency's RFC form," whereas the treating physician at issue "examined Mrs. Carpenter and made notes or circled the medical terms for her findings on her own medical form clearly set up to record the results of a thorough physical examination." *Id.* The Tenth Circuit's holding did not, however, turn on this distinction; rather, the Tenth Circuit held that the reviewing court's rejection of the treating physician's opinion as a check-box opinion was an improper post-hoc rationale for the ALJ's decision and reversed because the ALJ failed to sufficiently discuss the treating physician's opinion. *Id.* Thus, contrary to plaintiff's suggestion, *Carpenter* does not hold that a treating physician's opinion may not be rejected for the reason that it "is not explained in any significant detail," *see* Docket No. 14 at 21, and, unlike the treating physician's opinion in *Carpenter*, there is no indication that Dr. Wisneski's opinion was rendered in conjunction with a thorough physical examination. *See* R. at 213-15; *cf. Andersen*, 319 F. App'x at 723 ("Dr. Wren and Dr. Woods actually examined the patient . . . and recorded their clinical assessments"). The Court therefore rejects plaintiff's argument.

Plaintiff otherwise fails to establish that the ALJ failed to apply the correct legal standard. *See* Docket No. 14 at 27-28. The ALJ found that Dr. Wisneski's opinion was unsupported and implicitly declined to assign it controlling weight. *See Mays v. Colvin*, 739 F.3d 569, 575 (10th Cir. 2014) ("Because we can tell from the decision that the ALJ declined to give controlling weight to Dr. Chorley's opinion, we will not reverse on this ground."); *Watkins*, 350 F.3d at 1300. The ALJ also made findings as to the relevant 20 C.F.R. § 404.1527(c) factors, namely, the opinion's supportability and its consistency with the record as a whole. R. at 19; *see also* 20 C.F.R. § 404.1527(c)(3)-(4); *Oldham*,

509 F.3d at 1258.

Plaintiff takes issue with the ALJ's conclusion that Dr. Wisneski's opinion is not supported by his examination findings. Docket No. 14 at 24-25. Plaintiff cites multiple aspects of Dr. Wisneski's treatment notes, *id.*, that she claims undercut the ALJ's conclusion that plaintiff's exam findings "demonstrate only tenderness and no other consistently present findings generally associated with severe arthritis, such as swelling, Heberdon's nodes, or other deformities." *See* R. at 19. As stated, plaintiff's argument asks the Court to reweigh the evidence, which the Court will not do. Nonetheless, the Court has reviewed the record to determine whether this aspect of the ALJ's decision is supported by substantial evidence, including whether the exam findings plaintiff identifies overwhelm the ALJ's conclusion. *See Musgrave*, 966 F.2d at 1374.

The record reflects that plaintiff visited Dr. Wisneski on six occasions between June 2011 and December 2012. R. at 186-191, 201-212.[5] On June 2, 2011, plaintiff visited Dr. Wisneski complaining of joint pain. R. at 190. The Review of Systems ("ROS") section of the treatment note indicates plaintiff complained of indigestion, abdominal pain, joint pain and swelling, and back pain. *Id.* However, the examination revealed nothing abnormal with plaintiff's abdomen and, with respect to plaintiff's complaints of joint pain, found: "TTP over lumbar and cervical spine, TTP over knees, shoulders, hands bilaterally. Normal ROM and no gross joint deformities. No swelling

---

[5]The treatment note from plaintiff's October 21, 2011 visit appears twice in the record. R. at 186-87, 211-12.

or redness over joints." R. at 191.[6]   Plaintiff was diagnosed with joint pain, "arthralgia, site unspecified" and abdominal pain, placed on Norco and Flexeril, and told to present for lab tests during her next joint pain flareup.  *Id.*

On June 29, 2011, plaintiff visited Dr. Wisneski complaining that she suffered from joint pain in the early morning.  R. at 188.  The note indicates that a lab workup for rheumatoid arthritis ("RA") was normal and the ROS notes only joint pain or swelling. *Id.*  Dr. Wisneski's examination revealed "no cyanosis, no clubbing, no edema," and normal range of motion of joints.  R. at 189.  He assessed plaintiff as suffering from joint pain, "site unspecified," and noted that she "has no obvious signs today on exam" and could possibly be suffering from seronegative RA.[7]  *Id.*  Dr. Wisneski prescribed a low dose of Plaquenil and noted that, if plaintiff's symptoms did not resolve, he would consider changing her medication or possibly a different diagnosis.  *Id.*

On October 21, 2011, plaintiff visited Dr. Wisneski complaining of continued joint pain, stating that she stopped taking Plaquenil because she believed it caused tongue and throat irritation.  R. at 186.  The ROS states that plaintiff complained of joint pain and swelling and rash.  *Id.*  Dr. Wisneski's examination findings state: "EXTREMITIES: no cyanosis, no clubbing, no edema.[]  NEUROLOGIC EXAM: Grossly intact. [] MUSCULOSKELETAL Normal range of motion of joints, mild TTP over MCP joints

---

[6]The acronym "TTP" stands for "tender to palpation."  Docket No. 14 at 24 n.5. The acronym "ROM" appears to stand for "range of motion."

[7]"Seronegative" refers to the "absence of antibody usually found in a given syndrome (e.g., rheumatoid arthritis without rheumatoid factor)."  Stedman's Medical Dictionary seronegative (28th ed. 2006).

bilaterally."[8]  R. at 187.  Dr. Wisneski diagnosed plaintiff with RA, prescribed

Prednisone, Flexeril, and Norco, and indicated he would prescribe a steroid burst during

plaintiff's next flareup.  *Id.*  Dr. Wisneski indicated that, if symptoms improved, he would

prescribe Plaquenil again at a higher dose and attempt to rule out other causes of

plaintiff's symptoms, including hepatitis C and Lyme disease.  *Id.*

Plaintiff's next visit with Dr. Wisneski appears to have taken place on May 17,

2012.  R. at 208.  Plaintiff wished to review her medications, reporting that Plaquenil

was not working and that she was still suffering from pain in her hands, wrists, knees,

feet, shoulders, and spine.  *Id.*  The ROS indicates that plaintiff was having difficulty

sleeping, abdominal pain, joint pain or swelling, back pain, and some fatigue.  *Id.*  Dr.

Wisneski's exam findings revealed normal extremities, neurological findings, and "TTP

over MCP joints bilaterally, TTP over wrists bilaterally, TTP over knees bilaterally."  R.

at 209.  Dr. Wisneski assessed plaintiff with RA and joint pain, site unspecified, and

prescribed Methotrexate Sodium ("MTX"), folic acid, and Norco, and continued plaintiff's

Plaquenil prescription.  R. at 209.  Dr. Wisneski stated that, if the prescribed

medications did not improve her symptoms, he would consider other treatments.  *Id.*

Dr. Wisneski also appears to have order lab tests to determine whether hepatitis C was

the cause of plaintiff's pain.  *Id.*

On October 18, 2012, plaintiff visited Dr. Wisneski.  R. at 204.  The history

section of the October 18, 2012 note states, in part, "Pt wonders if it is lupus not RA.  Pt

---

[8]"MCP" stands for "metacarpophalangeal," which refers to articulations between
the metacarpus (wrist) and phalanges (fingers).  Stedman's Medical Dictionary
metacarpophalangeal (28th ed. 2006).

had negative lab studies for RA and Lupus, but was diagnosed clinically [as]

seronegative RA.  She was placed on Plaquenil and then MTX was added due to

continued worsening of sx.  Pt is scared of bioligoic [sic] meds like enbrel."  *Id.*  Plaintiff

reported suffering from joint pain and muscle pain, difficulty standing from a seated

position and standing for more than 10-15 minutes due to leg pain, difficulty opening

jars and reaching above head, periodic abdomen pain.  *Id.*  The ROS states that

plaintiff had difficulty sleeping due to pain, abdominal pain, joint pain or swelling, back

pain, and fatigue.  R. at 205.  Dr. Wisneski's examination findings state that plaintiff has

"mild diffuse TTP over abdomen," normal extremities and neurological findings, and,

with respect to musculoskeletal findings, "TTP over multiple joints (fingers, hands,

wrists, elbow, shoulders, knees, and hips.  Trigger points in bilateral muscle groups

(arms, legs, neck, and back)."  *Id.*  Dr. Wisneski assessed plaintiff with RA and fatigue.

*Id.*  The treatment notes indicates that CBC and CMP are normal, and TSH slightly low.

R. at 206.  The notes states that plaintiff will continue on her current meds, but, if her

symptoms do not improve, her diagnosis should be reevaluated or she should be

referred to a rheumatologist for a second opinion.  R. at 206-07.

On December 6, 2012, plaintiff visited Dr. Wisneski and reported that her

symptoms had not improved and that she has "several good days and several bad ones

in terms of pain, stiffness and swelling.  Pt reports that she had painful periods for many

years.  She would like to try something to make them better."  R. at 201.  The ROS

states that plaintiff had trouble sleeping, headaches, joint pain or swelling, back pain,

and fatigue.  R. at 202.  Dr. Wisneski's examination findings indicated that plaintiff's

extremities and neurologic findings were normal.  *Id.*  Dr. Wisneski's musculoskeletal

14

findings revealed "TTP over 2/3rd MSC joints bilaterally w/mild redness/swelling, TTP over wrists bilaterally and TTP over knees bilaterally." *Id.* The note reflects that plaintiff was assessed with RA and that her prescription for MTX and Plaquenil would continue, the former increased monthly until the maximum dose is reached or until intolerable side effects presented. *Id.* Plaintiff indicated that she did not wish to begin biologic medication due to cost. *Id.*

The Court finds that the ALJ's conclusions regarding Dr. Wisneski's treatment notes are supported by substantial evidence. Although plaintiff points out multiple instances where Dr. Wisneski's exam findings revealed joint tenderness or TTP over multiple joints, the ALJ explicitly recognized such findings. *See* R. at 19 ("the claimant's exam findings . . . demonstrate . . . tenderness"). To the extent plaintiff suggests that the ALJ should have weighed such findings differently, the Court will not reweigh the evidence or substitute its own discretion for that of the ALJ. See *Musgrave*, 966 F.2d at 1374. Although plaintiff cites portions of the treatment notes reflecting her repeated subjective complaints of joint swelling, Dr. Wisneski's exam findings appear to have revealed joint swelling on a single occasion: December 2012, where he noted that plaintiff had mild swelling. *See* R. at 202. Dr. Wisneski's exam findings do not otherwise explicitly reflect swelling, Heberdon's nodes, or other deformities. *See* R. at 205, 209, 187, 189, 191. Moreover, plaintiff does not identify sufficient exam findings that overwhelm the ALJ's conclusion that plaintiff "had normal range of motion of all joints on almost all of her exams." R. at 19. Dr. Wisneski's treatment notes do not contain any functional limitations and plaintiff appears to have complained of specific

15

functional limitations on only one or two occasions.  *See* R. at 201, 204.  It is not apparent that Dr. Wisneski's opinion was completed in the course of examining plaintiff and the opinion does not explicitly or implicitly refer to his treatment notes.  Thus, the ALJ's conclusion that Dr. Wisneski's proposed limitations were unsupported by his exam findings and treatment notes is supported by substantial evidence, as is the ALJ's decision to assign Dr. Wisneski's opinion little weight.

### 2.  Credibility

Plaintiff argues that the ALJ applied the wrong legal standard in evaluating the credibility of plaintiff's subjective complaints, failed to explain her decision, and that her decision was not based upon substantial evidence.  Docket No. 14 at 31-36.  In assessing a claimant's credibility, the ALJ must evaluate both whether the claimant has a medically determinable impairment that could reasonably be expected to produce the claimed symptoms and, if so, whether the claimed intensity, persistence, and limiting effects of the symptoms are credible.  *See* SSR 96-7p, 1996 WL 374186, at *1 (July 2, 1996).  "Credibility determinations are peculiarly the province of the finder of fact" and the Tenth Circuit will uphold such determinations, so long as they are supported by substantial evidence.  *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995).  Credibility determinations should not be conclusory, but instead "closely and affirmatively linked" to evidence in the record.  *Id.*  In assessing a claimant's credibility, an ALJ must consider the following factors, in addition to the objective medical evidence:

1. The individual's daily activities;

2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;

16

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7p, 1996 WL 374186, at *3 (July 2, 1996); *see also* 20 C.F.R. 404.1529(c)(4) ("We will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence . . . ."). The ALJ must set forth "the specific evidence he relies on in evaluating the claimant's credibility," but is not required to undergo a "formalistic factor-by-factor recitation of the evidence." *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

"One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record." SSR 96-7p, 1996 WL 374186, at *5. While evidence of a claimant's daily activities "may be considered, along with medical testimony, in determining whether a person is entitled to disability benefits," such daily activities do not "in themselves establish that a person is able to engage in substantial gainful activity." *Talbot v. Heckler*, 814 F.2d 1456, 1462 (10th Cir. 1987).[9]

_____

[9]The Tenth Circuit has held that, when a claimant alleges disabling pain, the proper framework as set forth in *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987),

17

The ALJ recounted plaintiff's testimony regarding the limitations imposed by her arthritic pain and then concluded that, although plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not credible.  R. at 17.  The ALJ concluded that, "[i]n terms of the claimant's alleged pain and inability to work, the evidence does not fully support her allegations" and then proceeded to discuss why she found that plaintiff's subjective complaints were not entirely supported by objective diagnostic evidence, exam findings, and treatment history.  R. at 17-18.  The ALJ discounted plaintiff's complaints regarding

---

requires consideration of
>    (1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling.

*Branum v. Barnhart*, 385 F.3d 1268, 1273 (10th Cir. 2004) (quotation omitted).  Where the first two prongs have been established, the ALJ must consider the credibility of plaintiff's assertions of severe pain in light of such factors as
>    the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

*Hargis v. Sullivan*, 945 F.2d 1482, 1489 (10th Cir. 1991) (quotation omitted).
>    Here, neither party asserts that the *Luna* framework applies.  However, assuming, without deciding, that the *Luna* framework is applicable, the first two prongs are not in dispute and the factors relevant to the third prong are not substantially dissimilar from the factors set forth in SSR 96-7p, 1996 WL 374186.  Thus, the result would appear to be the same whether plaintiff's subjective complaints are analyzed under the *Luna* framework or analyzed in light of the factors set forth in SSR 96-7p, 1996 WL 374186.

medication side effects, reasoning that she had not reported such side effects to her physicians.  R. at 18.  The ALJ then discussed plaintiff's alleged daily activities, concluding that the limitations plaintiff identified in this respect were not strong evidence in favor of a finding of disability and were outweighed by other factors.  *Id.*

To the extent plaintiff argues that the ALJ failed to engage in the appropriate two-step analysis of plaintiff's credibility, plaintiff's argument is without merit.  The ALJ appropriately found that plaintiff's medically determinable impairments could reasonably cause the alleged symptoms and then spent a substantial part of her decision discussing multiple considerations that undermined plaintiff's claims regarding the intensity, persistence, and limiting effect of such symptoms.  *See* R. at 18-19; *see also White v. Barnhart,* 287 F.3d 903, 909 (10th Cir. 2001) (holding that formalistic factor-by-factor recitation of the evidence is not required in evaluating the claimant's credibility).

Plaintiff argues that the ALJ simply "found plaintiff's testimony to be not credible," but "never made an assessment of the disabling effects of plaintiff's specific symptoms which were found credible to some extent" and never stated "which parts of plaintiff's testimony were credible and which were not."  Docket No. 14 at 32-33.  The Court does not agree that the ALJ's credibility determination was, as plaintiff contends, conclusory or "boilerplate."  *See id.*  First, the ALJ discussed multiple factors relevant to credibility.  *See* SSR 96-7p, 1996 WL 374186, at *3.  Second, as the ALJ's RFC finding reflects, the ALJ did not, as plaintiff argues, entirely reject plaintiff's claimed limitations.  Third, the ALJ's RFC finding and the ALJ's credibility discussion reflect that the ALJ considered plaintiff's allegations concerning specific symptoms.  The ALJ concluded that plaintiff's exam findings were "not entirely consistent" with plaintiff's allegations and

19

that plaintiff's exam findings were "consistent with some degree of limitation in the ability to lift, carry, push, and pull heavy objects." R. at 17. The ALJ found that plaintiff's treatment history was "indicative of some degree of limitation," but noted that plaintiff did not pursue other, more aggressive treatment options and did not use an assistive device for ambulating. R. at 18. The ALJ also specifically discussed plaintiff's allegations regarding medication side effects. *Id.* As to plaintiff's claimed daily activities, the ALJ noted that plaintiff was home alone with her children at least two to three days per week and cared for her three year old child, which suggests "an ability to oversee others, sustain concentration, and multitask." R. at 18. The ALJ appropriately recognized that such activity does not, by itself, demonstrate an ability to engage in sustained work activity, but that it did undercut plaintiff's allegations regarding the severity of her symptoms. *Id.* Contrary to plaintiff's contention, this is not a case where the ALJ's credibility determination is "just a conclusion in the guise of findings," *cf. McGoffin v. Barnhart*, 288 F.3d 1248, 1254 (10th Cir. 2002) (quotation omitted), where the ALJ disregarded plaintiff's complaints of pain solely because of a lack of objective evidence, or where the ALJ concluded that plaintiff was able to engage in substantial gainful activity solely because of sporadic daily activities. *Cf. Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984).

Plaintiff next argues that multiple aspects of the ALJ's credibility determination are not supported by substantial evidence. Plaintiff contends that the ALJ improperly disregarded her testimony that she suffered from nausea and fatigue as a side effect of her medications. Docket No. 14 at 34. Plaintiff testified that MTX and Plaquenil made her tired and nauseous and caused ulcers in her mouth. R. at 35. The ALJ found that

plaintiff's testimony on this issue was not credible because plaintiff did not report the alleged side effects to her treating physicians. R. at 18. Plaintiff argues that, contrary to the ALJ's conclusion, Dr. Wisneski's treatment notes reflect that plaintiff consistently reported suffering from fatigue and abdominal pain. Docket No. 14 at 24 (citing R. at 202, 205, 208). However, plaintiff overstates the evidence of record. Page 202 of the record reflects that plaintiff complained of fatigue, but also that she had no nausea or abdominal pain. R. at 202. Page 205 of the record reflects that plaintiff complained of fatigue and abdominal pain, but not nausea. R. at 205. Pages 208 and 209 of the record reflect that plaintiff complained of abdominal pain and fatigue, but not nausea. R. at 208-09. Although plaintiff testified that her medications caused fatigue and nausea, as the ALJ's decision correctly noted, there is no indication that plaintiff raised those same concerns to Dr. Wisneski. Although plaintiff stated to Dr. Wisneski that she "stopped taking Plaquenil due to tongue and throat irritation that she believed was from the medication," R. at 186, Dr. Wisneski does not appear to have substantiated that complaint and, moreover, continued to prescribe Plaquenil. *See, e.g.*, R. at 202. Plaintiff does not otherwise identify evidence that overwhelms the ALJ's conclusion on this issue. The ALJ's conclusion regarding plaintiff's allegations of medication side effects is supported by substantial evidence.

Plaintiff argues that the ALJ improperly "reduced the weight afforded to plaintiff's testimony based upon her activities of daily living" because performance of daily activities does not, by itself, mean that a claimant is not disabled. Docket No. 14 at 34-35. Plaintiff, however, misinterprets the ALJ's decision. The ALJ discussed plaintiff's daily activities, not as dispositive evidence of her ability to perform substantial gainful

activity, but as suggesting that plaintiff had a greater ability to function than she claimed.  R. at 18.  In so doing, the ALJ appropriately recognized that daily activities do not "in themselves establish that a person is able to engage in substantial gainful activity."  *Talbot v. Heckler,* 814 F.2d 1456, 1462 (10th Cir. 1987).  Moreover, contrary to plaintiff's assertion, the ALJ recognized that, although plaintiff home schooled and cared for her four children, ages fourteen, seven, five and three, she did so without the assistance of her husband only two to three times per week.  R. at 18.  Plaintiff contends that the ALJ's conclusion is undercut by the fact that her children do online coursework and the fact that the ALJ did not inquire whether any home schooling takes place on days when plaintiff's husband works.  Docket No. 14 at 36 n.7.  Plaintiff's hearing testimony, however, contains sufficient support of the ALJ's conclusions.  Plaintiff testified that her three oldest children begin home schooling at 9:00 each morning and that plaintiff and her husband both supervise that course work.  R. at 31.  Plaintiff testified that she cared for her three-year-old child on days when her husband worked and testified that usually she was home with the children, reading to them and keeping them busy with activities such as coloring and puzzles.  R. at 31-32.  This constitutes substantial evidence in support of the ALJ's conclusions regarding plaintiff's daily activities.  *See Hendron v. Colvin*, 767 F.3d 951, 956 (10th Cir. 2014) (holding that, although the record did not disclose frequency of certain activities, ALJ could consider such activities in evaluating the credibility of plaintiff's claimed limitations).

For the foregoing reasons, plaintiff has failed to establish reversible error in the ALJ's credibility determination.

### 3.  RFC

Plaintiff argues that the ALJ's RFC finding is insufficiently explained and not

supported by substantial evidence.  Docket No. 14 at 29-30.  "[T]he ALJ's decision

[must] be sufficiently articulated so that it is capable of meaningful review."  *Spicer v.*

*Barnhart*, 64 F. App'x 173, 177-78 (10th Cir. 2003) (unpublished).  Technical omissions

in the ALJ's reasoning do not, in all cases, dictate reversal; rather, reviewing courts

must exercise common sense.  *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th

Cir. 2012).  Social security rulings dictate that an ALJ's RFC assessment

> include a narrative discussion describing how the evidence supports each
> conclusion, citing specific medical facts (e.g., laboratory findings) and
> nonmedical evidence (e.g., daily activities, observations).  In assessing RFC,
> the adjudicator must discuss the individual's ability to perform sustained work
> activities in an ordinary work setting on a regular and continuing basis (i.e.,
> 8 hours a day, for 5 days a week, or an equivalent work schedule) and
> describe the maximum amount of each work-related activity the individual
> can perform based on the evidence available in the case record. The
> adjudicator must also explain how any material inconsistencies or
> ambiguities in the evidence in the case record were considered and
> resolved.

SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996).  Some courts hold that the narrative

discussion requirement of SSR 96-8p "does not require citation to a medical opinion, or

even to medical *evidence* in the administrative record for each RFC limitation

assessed."  *See Crawford v. Colvin*, 2013 WL 672955, at *4 (D. Kan. Feb. 25, 2013)

(emphasis in original); *accord Terry v. Colvin*, 2015 WL 400907, at *10 (D. Kan. Jan 28,

2015).  However, the question of whether an ALJ has engaged in an appropriate

narrative discussion is, as a general matter, evaluated on a case-by-case basis.

*Compare Hendron*, 767 F.3d at 954-55, *with Spicer*, 64 F. App'x at 177-78 (holding that

ALJ's decision did not "demonstrate that he specifically considered the limitation to her hands either individually or in combination with her other demonstrated impairments").

Plaintiff appears to argue that, in light of the fact that the ALJ assigned little weight to Dr. Meier's and Dr. Wisneski's suggested functional limitations, the ALJ failed to adequately articulate the source of the functional limitations set forth in her RFC finding.  Docket No. 14 at 29-30; Docket No. 16 at 11-12.  The Court disagrees.  "[T]he RFC is an administrative assessment made on the basis of all of the evidence in the record, not only the medical evidence, and, as such, is well within the province of the ALJ."  *Dixon v. Apfel*, 1999 WL 651389, at *2 (10th Cir. Aug. 26, 1999).  Here, the ALJ's RFC finding rested upon two categories of evidence, namely, plaintiff's treatment records and her claimed limitations, which the ALJ found partially credible.  With respect to the former category of evidence, the ALJ noted that plaintiff's allegations were not fully supported by objective diagnostic evidence.  R. at 17.  The ALJ concluded that plaintiff's exam findings are consistent with some degree of limitation in the ability to life, carry, push, and pull heavy objects; however, some exams also revealed "5/5" strength, normal sensation and range of motion, as well as normal ambulation, suggesting that "claimant retains adequate strength to lift, carry, push, and pull at least moderately heavy objects," has "no significant limitations in the ability to engage in postural activities, walk, or stand," and no manipulative limitations.  *Id.*  In support of this finding, the ALJ cited Dr. Meier's examination findings, R. at 182-84, and Dr. Wisneski's treatment notes.  In discussing Dr. Wisneski's opinion, the ALJ reiterated that "the examination results and longitudinal treatment notes do support the residual functional capacity as adopted" as do the opinions of Dr. Valette, R. at 193-94, and Dr.

24

Meier.  R. at 19.  In so doing, the ALJ identified the medical evidence that she relied on in formulating plaintiff's RFC.  *Cf. Moon v. Barnhart*, 159 F. App'x 20, 23 (10th Cir. 2005) (unpublished) ("The ALJ rejected *both* RFC assessments as unsupported by the credible medical evidence and made an RFC finding in between them.  But the ALJ never specified what he believed the credible medical evidence to be, either for the purpose of rejecting the doctors' RFC assessments or for the purpose of supporting his own finding." (citations omitted))

As to the plaintiff's subjective limitations, the ALJ noted that plaintiff testified that she could sit for 10 minutes, stand for 15 minutes, walk for 5 minutes, lift 5 pounds, and that her medication caused side effects.  R. at 17.  The ALJ noted plaintiff's testimony that she does not take her children to the park, no longer drives, and relies on her husband and older children to perform household chores.  *Id.*  As noted above, the ALJ did not entirely discredit plaintiff's claimed limitations; rather, the ALJ found that plaintiff was limited in the ways she claimed, albeit perhaps not to the full extent alleged, a finding which is reflected in the RFC finding.  *Compare* R. at 16, *with* R. at 17.  Thus, the ALJ's decision sufficiently identified the subjective complaints the ALJ relied upon in formulating plaintiff's RFC.  *Cf. Lehman v. Colvin*, No. 13-cv-01600-WYD, 2014 WL 4696200, at *3 (D. Colo. Sep. 22, 2014) (holding that ALJ failed to make appropriate function-by-function analysis where ALJ gave both physicians' opinions little weight and did not address plaintiff's testimony regarding her claimed limitations).

The ALJ can appropriately derive functional limitations from medical records, *see Armer v. Barnhart*, 191 F. App'x 675, 677 (10th Cir. 2006) (unpublished) (upholding

ALJ's decision that interpreted medical records as not "identifying any functional limitations or reporting a medical opinion of disability"), as well as from evidence regarding a plaintiff's claimed limitations, *see Hendron*, 767 F.3d at 956-57 ("[T]he ALJ did not overlook Ms. Hendron's problems with sitting; he found that the evidence did not support any limitation on her ability to sit during the Relevant Time Period."). Here, the ALJ acted within her purview in formulating an RFC finding based upon such evidence. *See McDonald v. Astrue*, 492 F. App'x 875, 885-86 (10th Cir. 2012) ("we reject McDonald's contention that an ALJ is not competent, in the absence of a medical opinion, to assess the severity of mental symptoms and determine the extent of the limitations that result based on the evidence in the claimant's medical records, her daily activities, and her positive response to medications"). The ALJ's decision adequately explained how the evidence supported her RFC finding and appropriately discussed specific medical facts and nonmedical evidence. *See Hendron*, 767 F.3d at 954; *Lopez v. Colvin*, No. 12-cv-01293-WYD, 2013 WL 5201009, at *3 (D. Colo. Sep. 16, 2013) (rejecting argument that ALJ failed to provide a narrative discussion because "the ALJ cited specific medical facts and opinions in assessing his RFC"). Thus, the Court rejects plaintiff's argument that the ALJ's narrative discussion was insufficient to permit meaningful review of the RFC finding and that plaintiff's RFC was not based upon substantial evidence. *See Burrell v. Colvin*, 605 F. App'x 691, 692-93 (10th Cir. 2015) (unpublished) (citing *Hendron*, 767 F.3d at 956-57 as holding that "ALJ's evaluation of evidence provided adequate narrative discussion required by SSR 96-8p, although RFC lacked explicit function-by-function analysis").

### III. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the decision of the Commissioner that Toni S. Oliva was not

disabled is **AFFIRMED**.


DATED September 30, 2015.

BY THE COURT:


  s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge